IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

LOTTIE SMITH                                                      PLAINTIFF

VS.                              CIVIL ACTION NO. 3:07-cv-467-WHB-LRA

UNUM LIFE INSURANCE COMPANY OF AMERICA                             DEFENDANT

<u>OPINION AND ORDER</u>

This cause is before the Court on the Motion of Defendant for
Summary Judgment.  The Court has considered the Motion, Response,
Rebuttal, attachments to the pleadings including the administrative
record, and finds that the Motion is well taken and should be
granted.

I.  **Factual Background and Procedural History**

Plaintiff, Lottie Smith ("Smith"), was employed as a licensed
practical nurse for Select Specialty Hospital in Jackson,
Mississippi.  As part of her employment, Smith was eligible for
short and long term disability benefits under a policy of insurance
that had been issued by Defendant, UNUM Life Insurance Company of
America ("Unum"), to Select Medical Corporation ("Disability
Policy").  Under the terms of the subject policy, Select Medical
Corporation was the administrator of the short and long term
disability benefit plans, and Unum acted as the claims fiduciary
designated to administer claims made for benefits under the plans.

On or about December 22, 2004, Smith submitted a claim for benefits under the subject Disability Policy.  See Mot. for Sum. J., Ex. C (Admin. R.), at 16–21.[1]  In the claim, Smith reported that she had been unable to work since July 6, 2004, and described the circumstances of her injury as follows: "Helping to lift a patient off the floor [and] back into bed.  Used right knee to help support patient's weight.  Started having pain in right heel with some swelling."  Id., Ex. C, at 16.  In addition to the claim form, Smith submitted an Attending Physician's Statement ("APS") from Doctor Thom Tarquinio, M.D. ("Tarquinio"), which reports that Smith's symptoms began in July of 2004, and she was first examined by him on July 14, 2004.  According to Tarquinio's APS, which is dated December 17, 2004, Smith's prognosis was guarded, she had not reached maximum medical improvement, he expected fundamental changes in her condition within a period of one to two months, and he recommended restricting her activities to avoid long distance walking or running.  Id., Ex. C, at 18.

Attached to Tarquinio's APS was a copy of a medical report from Smith's December 2, 2004, office visit.  Id., Ex. C, at 21. According to the report, Smith returned to Tarquinio's office on that date for further discussion regarding her continuing right foot and ankle pain.  Smith had previously been placed in a cast

_____

[1]  Documents are cited to the first page at which they appear in the Administrative Record.

2

for a possible Achilles tendinosis without improvement.  Smith had also been treated for possible gout by an emergency room physician, and reported a decrease in pain for approximately one week following treatment.  Tarquinio was "somewhat at a loss to make a specific diagnosis" because he was not aware of any orthopedic foot or ankle problem that could cause the migratory and diffuse pain described by Smith.  Tarquinio, based on Smith's history of gout, again prescribed medication to treat that disease, and recommended referral to Dr. Phillip Blount if the medication was not effective.

Smith also submitted an APS from Doctor Steven Watts, M.D. ("Watts"), which reports that Smith's symptoms began on July 8, 2004, and she was last examined by him on August 24, 2004. According to Watts's APS, which is dated December 17, 2004, Smith's prognosis was guarded, she had not reached maximum medical improvement, he expected fundamental changes in her condition within a three to four month period, and he recommended restricting her activities to avoid long distance walking or running.  Id., Ex. C, at 17.

Based on the timing of Smith's claim, Unum determined that it was one for short term disability benefits.  Under the Disability Policy, such benefits were available:

[When] Unum determine that:

− you are limited from performing the material and substantial duties of your regular occupation due to sickness or injury; and

3

– you have a 20% or more loss of weekly earnings due to
the same sickness or injury.

Id., Ex. B (Disability Policy), at 18.  The Disability Policy also

contains the following exclusion:

Your plan does not cover any disabilities caused by,
contributed to by, or resulting from your:

– occupational sickness or injury, however, Unum will
cover disabilities due to occupational sickness or
injuries for partners or sole proprietors who cannot be
covered by a workers' compensation law.

Id., Ex. B, at 22.  The phrase "occupational sickness or injury" is

defined under the subject policy as "a sickness or injury that was

caused or aggravated by any employment for pay or profit."  Id.,

Ex. B, at 50.

On January 5, 2005, Unum sent Smith a letter indicating that

it had received her claim for short term disability benefits, and

that it had completed its initial review of the information she had

provided.  Id., Ex. C, at 56–58.  The letter then cited several

provisions in the Disability Policy regarding the manner in which

disability was defined, and informed Smith:

To determine if you meet the policy definition of
disability, we need additional information about you're
[sic] last day worked.  We have asked your employer to
provide this information.  In addition, we are contacting
Dr. Watts to obtain the medical information we need to
continue evaluating your claim.

The letter then identified the following information as being

required under the subject policy:  the time of disability, place

of disability, circumstances of disability, nature of disability,

and name and address of the employee.  Id., Ex. C, at 57.

4

On January 5, 2005, Unum also sent Watts a letter requesting additional information regarding Smith's claim.   In this letter Watts was asked:

> 1. Please tell us in your opinion, what caused the knee pain?
>
> 2. Do you feel this problem may have been a direct result of [Smith's] occupation as a Licensed Practical Nurse?
>
> 3. To your knowledge, did Ms. Smith receive treatment for this problem prior to her initial visit with you on December 8, 2005?

Unum also requested copies of Smith's diagnostic test reports. Id., Ex. C, at 53-54.   On January 19, 2005, Unum sent a second letter to Watts advising him that it had not yet received the information it had previously requested, and again requested that he provide same.   Id., Ex. C, at 71.   On that same date, Unum sent Smith a letter, enclosing a copy of its January 5, 2005, correspondence to her, and requested that she promptly provide the previously requested information in order to determine whether she was eligible for short term disability benefits.   Id., Ex. C, at 74-75.   In this letter, Smith was advised that Unum had received the information it had requested from her employer, but that Watts had not yet responded to its request.   Smith was also informed that Unum had sent a second request for information to Watts.

On or about January 29, 2005, Watts provided Unum the following information:

1. Please tell us in your opinion, what caused the knee pain?

     Arthropathy/neuropathy at left lower extremity

2. Do you feel this problem may have been a direct result of [Smith's] occupation as a Licensed Practical Nurse?

     Uncertain etiology

3. To your knowledge, did Ms. Smith receive treatment for this problem prior to her initial visit with you on December 8, 2005?

     First visit was July 14, 2004

Watts did not provide any diagnostic tests reports. Id., Ex. C, at 99-100.  On February 1, 2005, Watts sent a second response to Unum in which he provided the following information:

1. Please tell us in your opinion, what caused the knee pain?

     Ms. Smith works as a nurse in a hospital.  She stated she was trying to help lift a heavy patient and when she pushed off with her right leg, she somehow strained her.

2. Do you feel this problem may have been a direct result of [Smith's] occupation as a Licensed Practical Nurse?

     Yes

3. To your knowledge, did Ms. Smith receive treatment for this problem prior to her initial visit with you on December 8, 2005?

     Yes

Again, Watts did not provide any diagnostic tests reports.  Id., Ex. C, at 110-11.

6

After receiving both of Watts's responses, Unum sent Watts a letter on February 3, 2005, requesting that he: "Please indicate if this illness, in your opinion is work related.  I have attached your letters which give two different answers to the question." Id., Ex. C, at 115-16.  Watts did not respond to this request.

On February 3, 2005, Smith also spoke with Unum, and was advised that her "AP" (presumably attending physician) had provided different answers regarding whether her injury was work-related, and that it had requested clarification from him on this issue. Id., Ex. C, at 117.  Smith was also informed that Unum could not pay disability benefits in the event her injury was work-related and, therefore, that it needed clarification on this issue.  Id., Ex. C, at 117.

On February 7, 2005, Unum telephoned Smith.  The summary of the conversation is as follows:

> I advised [Smith] that Dr. Watts advised that he is stating that her injury occurred due to a work related [sic].
>
> "WC" (presumably workers' compensation") was denied.[2]
>
> I advised that the info we have indicates that her injury was work-related, as such we cannot approve her [short term disability] claim.
>
> She disagreed and will get a lawyer.
>
> I advised that she should appeal the WC decision.

Id., Ex. C, at 129.

---

[2]  Smith's claim for workers' compensation benefits was denied on September 8, 2004.  Id., Ex. C, at 24.

7

On February 24, 2005, Unum again telephoned Smith.  <u>Id.</u>, Ex. C, at 132.  During this conversation, Smith was advised that Watts had not yet responded to its request for clarification, and that clarification from him was required as he had provided two different answers in the response to its request for information. Smith indicated that she would follow up with Watts.  On that same date, Unum also sent Watts a letter, attached to which was its prior February 3, 2005, letter requesting clarification, again requesting that he provide additional information regarding Smith's claim.  <u>Id.</u>, Ex. C, at 131.  Watts did not respond to this request.

On March 15, 2005, Unum sent Smith a letter informing her: "As you may recall, we previously requested additional information that was necessary to evaluate your claim for disability benefits. Since we did not receive the requested information within the specified time period, regrettably, we must close your file..." <u>Id.</u>, Ex. C, at 141-43.  The letter again cites to the policy provision that requires a claimant to provide information regarding the time of disability, place of disability, circumstances of disability, nature of disability, and name and address of employee. The letter also advised Smith:

> – If you disagree with our closure decision, and want to pursue benefits further, please provide the information we requested in our original letter.  If we receive the requested information within 30 days of the date you receive this letter, we will be happy to reopen your file for continued review.

8

- If you have additional information to support your request for disability benefits, it must be sent to my attention for further review ... within 180 days of the date you receive this letter.

- [I]f you disagree with our determination and want to appeal this claim decision, you must submit a written appeal.  This appeal must be received by us within 180 days of the date you receive this letter.  Unum would re-open her file in the event she provided the necessary information within thirty days...

Id., Ex. C, at 142.  The letter also provided the address to which an appeal was to be mailed, and notified Smith that: (1) she could submit written comments, documents, or other information in support of her appeal, (2) she would have access to all relevant documents as allowed by law, (3) the review would take into account all new information regardless of whether it was presented or available during the initial review, (4) no deference would be afforded to the initial determination, (5) the review would be conducted by an individual different from that who made the initial determination, and (6) the claim determination would be deemed final in the event an appeal was not submitted.  Id., Ex. C, at 142.  Smith did not seek to either re-open her file or appeal the decision made by Unum.

On July 3, 2007, Smith filed a Complaint against Unum in the Circuit Court of First Judicial District of Hinds County, Mississippi, alleging claims of breach of contract, bad faith, and fraudulent/negligent misrepresentation.  The case was removed to this Court on August 14, 2007, on the bases of federal question and

diversity jurisdiction.  As 29 U.S.C. § 1144 bars state law causes of action when: (1) "the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan" and (2) "the claims directly affect the relationship between the traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries", see Hollis v. Provident Life and Acc. Ins. Co., 259 F.3d 410, 414 (5th Cir. 2001), the Court finds that Smith's claims are pre-empted under ERISA and, therefore, the Court may properly exercise federal subject matter over this case pursuant to 28 U.S.C. § 1331.  Unum has now moved for summary judgment on Smith's denial of disability benefits claim.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary

11

judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. <u>National Screen Serv. Corp. v. Poster Exchange, Inc.</u>, 305 F.2d 647, 651 (5th Cir. 1962).

### III.  Legal Analysis

In support of its Motion for Summary Judgment, Unum argues that Smith cannot maintain a cause of action under ERISA because she failed to exhaust her administrative remedies.  On this issue, the United States Court of Appeals for the Fifth Circuit has held: "This court requires that claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits."  <u>Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.</u>, 215 F.3d 475, 479 (5th Cir. 2000)(citing <u>Denton v. First Nat'l Bank of Waco</u>, 765 F.2d 1295, 1300 (5th Cir. 1985)).  <u>See</u> <u>also</u> <u>Cooperative Benefit Adm'rs, Inc. v. Ogden</u>, 367 F.3d 323, 336 (5th Cir. 2004).  Smith has not presented any evidence or argument that she either sought to reopen her administrative claim file or appeal the decision made by Unum with regard to her claim.

In response to the exhaustion defense raised by Unum, Smith argues that the notice she received, by which her claim for short term disability benefits was denied, was statutorily insufficient. The Fifth Circuit has recognized that "ERISA provides certain

minimal procedural requirements upon an administrator's denial of

a benefits claim", which are "set forth in 29 U.S.C. § 1133 and the

regulations promulgated by the Department of Labor thereunder."

Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan, 493

F.3d 533, 539 (5th Cir. 2007). Section 1133 provides:

> In accordance with regulations of the Secretary, every
> employee benefit plan shall –
>
> (1) provide adequate notice in writing to any participant
> or beneficiary whose claim for benefits under the plan
> has been denied, setting forth the specific reasons for
> such denial, written in a manner calculated to be
> understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant
> whose claim for benefits has been denied for a full and
> fair review by the appropriate named fiduciary of the
> decision denying the claim.

29 U.S.C. § 1133. The applicable federal regulations in force at

the time Smith's claim was denied provide:

> The notification shall set forth, in a manner calculated
> to be understood by the claimant –
>
> (i) The specific reason or reasons for the adverse
> determination;
>
> (ii) Reference to the specific plan provisions on which
> the determination is based;
>
> (iii) A description of any additional material or
> information necessary for the claimant to perfect the
> claim and an explanation of why such material or
> information is necessary;
>
> (iv) A description of the plan's review procedures and
> the time limits applicable to such procedure ...

29 C.F.R. 2560.503-1(g)(1)(i)-(iv)(2000).

The Fifth Circuit has also recognized that:

> Challenges to ERISA procedures are evaluated under the substantial compliance standard. <u>Lacy v. Fulbright & Jaworski</u>, 405 F.3d 254, 256–57 & n.5 (5th Cir. 2005). This means that the "technical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 has been fulfilled." <u>Robinson v. Aetna Life Ins.</u>, 443 F.3d 389, 393 (5th Cir. 2006). The purpose of section 1133 is "to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." <u>Schneider v. Sentry Long Term Disability</u>, 422 F.3d 621, 627–28 (7th Cir. 2005). The "substantial compliance" test also "considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." <u>Moore v. LaFayette Life Ins. Co.</u>, 458 F.3d 416, 436 (6th Cir. 2006). "All communications" may include oral communications. <u>White v. Aetna Life Ins. Co.</u>, 210 F.3d 412, 417 (D.C. Cir. 2000)(citing <u>Heller v. Fortis Benefits Ins. Co.</u>, 142 F.3d 487, 493 (D.C. Cir. 1998)).

<u>Wade</u>, 493 F.3d at 539. Thus, "Section 1133 and its corresponding regulations require that the Plan: (1) provide adequate notice; (2) in writing; (3) setting forth the specific reasons for such denial; (4) written in a manner calculated to be understood by the participant; and (5) afford a reasonable opportunity for a full and fair review by the administrator." <u>Id.</u> at 540.

After reviewing the record in this case, the Court finds that all of the aforementioned requirements have been satisfied. The March 15, 2005, letter Smith received from Unum clearly stated, and therefore provided adequate written notice, that her claim file had been closed. <u>See</u> Mot. for Sum. J., Ex. C, at 141–43. Additionally, the letter was "written in a manner calculated to be understood by the participant" and afforded her "a reasonable opportunity for a

full and fair review by the administrator." Id., Ex. C, at 142.
Finally, the letter sets forth the specific reason for the actions
taken by Unum, i.e. it had not received information regarding the
time of Smith's disability, place of disability, circumstances of
disability, nature of disability, and name and address of the
employee, that it had requested and that she was required to
provide under the terms of the Disability Policy. Id. Ex. C, at
141.  Although Smith argues that the notice was deficient because
it "did not specify what information it did not receive, from whom
said information was sought and how the information would be used
in UNUM's claim review process", see Pl.'s Mem. in Supp. of Resp.
to Mot. for Sum. J., at 8, the Court finds that this argument is
not supported by the record.  As noted above, under the
"substantial compliance" test, the Court may consider "all
communications between an administrator and plan participant to
determine whether the information provided was sufficient under the
circumstances." Wade, 493 F.3d at 539 (quoting Moore, 458 F.3d at
436).  In the case sub judice, Smith was repeatedly advised that
she was required to provide information regarding her claimed
disability – including the time, place, circumstances, and nature
of the disability – through the correspondences she received from
Unum.  See Mot. for Sum. J, Ex. C, at 56-58 (January 5, 2005,
correspondence); id. Ex. C, at  74-75 (January 19, 2005,
correspondence).  Smith was also advised that Unum was waiting to

15

receive medical information from Watts to determine her eligibility for short term disability benefits.  Id. Ex. C, at 74-75.  Smith also spoke with Unum on at least three occasions and was advised that: Watts had provided different answers regarding whether her injury was work-related; that Unum had requested clarification from him on this issue; and that Unum could not pay disability benefits in the event her injury was work-related.  Id., Ex. C, at 117, 129, 132 (summaries of telephone conversations of February 3, 7, and 24, 2005, respectively).  Taken as a whole, the Court finds from the record that the notice provided to Smith set forth the specific reasons for the closure of her claim file and, thereby, complied with 29 U.S.C. § 1133 and the governing federal regulations.

Based on its review of the record, the Court finds that Smith has failed to show that there exists a genuine issue of material fact with regard to whether the notice she received satisfied the requirements of 29 U.S.C. § 1133 and/or 29 C.F.R. § 2560.503-1(g)(1)(i)-(iv).  Accordingly, the Court finds that Smith has failed to show that there exists a genuine issue of material fact with regard to whether she was excused from exhausting her administrative remedies based on the content of the notice provided by Unum.

Smith also argues that she was excused from exhausting her administrative remedies because an appeal of the decision regarding her claim for short term disability benefits would have been

futile.   The Fifth Circuit has "recognized an exception to the affirmative defense of failure to exhaust administrative remedies when such attempts would be futile." Bourgeois, 215 F.3d at 479 (citing Hall v. National Gypsum Co., 105 F.3d 225, 232 (5th Cir. 1997)).  See also Ogden, 367 F.3d at 336 n.61.  The Fifth Circuit, however, has also recognized that the "failure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility." McGowin v. ManPower Int'l, Inc., 363 F.3d 556, 559 (5th Cir 2004).  See also Denton, 765 F.2d at 1302 (finding that the futility exception to the exhaustion requirement did not apply in a case in which there was no showing that the administrative review committee was hostile or bitter toward the plaintiff).

In the case *sub judice*, Smith has not presented any evidence to show bias, hostility, or bitterness.  Instead, she argues that appealing the administrative decision would have been futile because Unum had already ignored the medical findings of her treating physicians and denied her claim, thereby evidencing a predisposition to rejecting her claim.  The Court first finds this argument is not supported by the record.  In the notice Smith received, she was specifically informed of the procedure for appealing the decision of Unum with regard to her claim, and was also informed that: (1) she could submit written comments, documents, or other information in support of her appeal, (2) she

would have access to all relevant documents as allowed by law, (3) the review would take into account all new information regardless of whether it was presented or available during the initial review, (4) no deference would be afforded to the initial determination, and (5) the review would be conducted by an individual different from that who made the initial determination. See Mot. for Sum. J. (Ex. C), at 142. Based on the content of the notice, and the appeal process outlined therein, the Court finds that Smith has failed to show that a meaningful administrative appeal review process did not exist under the disability plan. Second, the Court finds that allowing Smith to proceed on her "predisposition" argument would be contrary to the ERISA administrative process envisioned by Congress. See e.g. Denton 765 F.2d at 1303 (rejecting the plaintiff's theory that an allegation of bitterness or hostility was sufficient to give rise to the futility exception on a finding that "no plaintiff who knew how to claim 'bitterness or hostility' on the part of the Plan's review committee could be compelled to submit his claim for administrative review of the denial of benefits prior to the filing of a federal lawsuit. Accordingly, benefit disputes would not only be more numerous and more often frivolous, but less defined as a result of this evasion of the congressionally mandated administrative process.").

Based on its review of the record, the Court finds that Smith has failed to show that there exists a genuine issue of material

fact with regard to whether an administrative appeal of the decision made by Unum regarding to her short term disability claim would have been futile.  Accordingly, the Court finds that Smith has failed to show that there exists a genuine issue of material fact with regard to whether she was excused from exhausting her administrative remedies based on her claim of futility.

In sum, the Court finds that Smith has failed to show that there exists a genuine issue of material fact with regard to whether she was excused from exhausting her administrative remedies prior to filing the subject lawsuit.  As the record clearly shows that Smith did not exhaust her administrative remedies, the Court finds that Unum is entitled to summary judgment on her claims.

## IV.  Conclusion

For the forgoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendant Unum Life Insurance Company of America [Docket No. 8] is hereby granted.

A Final Judgment dismissing this case with prejudice shall be entered this day.

SO ORDERED this the 10th day of October, 2008.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE

19